**Evelyn PETTYJOHN, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of the Department of Health and Human Services, Defendant.**

**No. 91–K–1078.**

United States District Court, D. Colorado.

Oct. 30, 1991.

Jacquelyn Higginbotham, Fort Morgan, Colo., Colorado Rural Legal Services, for plaintiff.

Chalk Mitchell, Asst. U.S. Atty., for defendant.

### MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Evelyn Pettyjohn is forty six years of age. She has suffered from a variety of ailments for in excess of fifteen years: obesity, hypertension, heart murmurs and significant bouts of depression. Most of her afflictions are minor, and insufficient to ground a claim for a disability allowance; however, her muscular and spinal disorders are chronic and severe. They

have prevented her from working since 1984. Ms. Pettyjohn is obliged to use crutches. She is bed bound at least every two to six months. The doctors testify that she is unsuited for manual work, yet cleaning, lifting, pulling are all she has ever done. Ms. Pettyjohn is also illiterate, at least in the estimation of all save the administrative law judge (ALJ) and the Secretary.

■ The ALJ, in particular, has played fast and loose with the medical testimony of a succession of doctors, culling isolated sentences and misconstruing the substance of their recommendations. He has disregarded the testimony of Ms. Pettyjohn and her husband in its entirety. He has failed to consider substantial evidence of her illiteracy. He has engaged in highly schematic reasoning that undermines the merits of the claimant's case. It is clear that the ALJ did not empathize with Ms. Pettyjohn's plight; it is equally clear this distorted his understanding of her legal entitlements. What is even more distressing is that the ALJ's perfunctory reasoning was upheld by the Secretary. Claimants seeking justice in Social Security actions must often feel themselves engaged in a Sisyphean enterprise.

Ms. Pettyjohn suffers from degenerative joint disease of the lumbar spine, aggravated by a lumbosacral strain in 1982. She also suffers from arthritis of the knees. It is clear from the testimony of a legion of doctors in the trial record that she is in considerable and accentuating pain. Even the ALJ accepts this; he recognizes that her impairments are severe within 20 C.F.R. § 404.1520 and § 416.920. What he denies is that the pain comes within the specific signs and requirements to "meet or equal" the so-called listing requirements. *See generally* 20 C.F.R. Ch. III pt. 404, subpt. P, app. 1 (1991). The list is a guideline as to the types of ailments that are sufficiently severe to fall within disability allowances. It is not intended to be comprehensive nor to be interpreted in a highly schematic way. The list is intended to be the tool not the master of the judge.

Moreover, it is manifest that Ms. Pettyjohn's diseases were more than adequate to fulfill the "meet or equal" requirement; they were clearly severe enough. They were on any reasonable analysis *ejusdem generis* with the type of ailments specified in the list. For example, under impairments of the spine the list requires, inter alia, pain or muscular spasms. *Id.,* § 1.05(C). The claimant certainly has pain, marked by a degree of severity, which the ALJ had earlier accepted. Furthermore, the claimant has degenerative joint disease, a condition more severe than muscular spasms.

■ The next step for the ALJ, having erroneously found the claimant excluded from the list, was to consider the claimant's "residual functional capacity" pursuant to 20 C.F.R. § 404.1567 and § 416.967. He commences his reasoning by rejecting the testimony of the claimant and her husband as "subjective," rather than being justifiably skeptical, he denudes it of all significance and fails to see how it may in fact be corroborated by the testimony of the doctors. He then refers to Exhibit 28, a statement of Dr. James Horstman, which indicated that Ms. Pettijohn may go five to six months without severe disablement. However, the ALJ ignores, in this context, clear precedent establishing that pain or disability need not be constant over a twelve month period; it can, in fact, be intermittent. *See Pagan v. Bowen,* 862 F.2d 340, 348 (D.C.Cir.1988); *Singletary v. Bowen,* 798 F.2d 818, 821 (5th Cir.1986); *Freemyer v. Sullivan,* 723 F.Supp. 1417, 1420 (D.Kan.1989). The test envisages a substantial or operational disablement. There is not a shadow of a doubt that the claimant meets this test and that the ALJ has acted in error of law.

Furthermore, in determining whether the claimant could work, it is necessary to assess the type of job for which she is qualified, taking into account the fact, which even the ALJ accepts, that she is incapable of heavy physical labor. Dr. Horstman also indicated that Ms. Pettyjohn could not be employed in a job which required excessive physical endeavor. All this necessi-

tates a consideration of the literacy issue, for if the claimant is illiterate, one cannot conclude that she had residual functional capacity. It is here that the ALJ's reasoning is at its most partisan and selective. He opines, that her ability to complete the disability report in her own handwriting undermined her testimony that she was illiterate. (R. at 17.) The ALJ neglects to mention, however, that it is not entirely her own uncorroborated testimony which supports a finding of illiteracy. For example, a disability examiner concludes: "She has no education and would therefore be classified as a younger individual who is illiterate." (R. at 88.)

Further, the ALJ in his approach as to what constitutes "literacy" is curmudgeonly and minimalist; that Ms. Pettyjohn could put pen to paper, under supervision and coaching, is not proof of literacy. In short, it is doubtful whether Ms. Pettyjohn could get or hold any sedentary jobs. Given her illiteracy, she does not have the residual functional capacity to perform substantially gainful activity.

■ Furthermore, many cases establish that it is not solely getting a job that is the issue but the ability to hold one. *Dix v. Sullivan*, 900 F.2d 135, 138 (8th Cir.1990); *Singletary*, 798 F.2d at 822; *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir.1983); *Freemyer*, 723 F.Supp. at 1420. If Ms. Pettyjohn, confined to physical and arduous labor due to her illiteracy, must hobble along on crutches (it is accepted that she often needs them), be completely disabled at certain periods and be incapable of performing lifting, bending and stretching tasks then her chances of keeping any job are negligible. These mistaken assumptions and infelicities of legal interpretation are sufficient to reverse this particular decision. However, in view of the spate of meritorious appeals coming to this court from decisions of the administrative law judges, it seems necessary to outline the criteria and legal principles by which the ALJ and the Secretary should be guided, with the hope that future claimants will not feel themselves engaged in a Kafkaesque pursuit of justice.

■ The ALJ is granted a measure of latitude in the determination of the case before him. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir.1977). It is not the function of this court to substitute its own decision for that of the ALJ. *Melton v. Sullivan*, 931 F.2d 900, 904 (10th Cir.1991); *Broadbent*, 698 F.2d at 413; *Garret v. Califano*, 460 F.Supp. 888, 890 (D.Kan. 1978). He is the fact finder and best suited to make a judgment as to the credibility of the claimant. *Broadbent*, 698 F.2d at 413. However, the court does not merely rubber stamp the decision of the ALJ. *Mitchell v. Weinberger*, 404 F.Supp. 1213, 1215 (D.Kan.1975). The court must be ever mindful of the Social Security Act's role "[t]o ameliorate some of life's rigors for the disabled." *Dvorak v. Celebrezze*, 345 F.2d 894, 897 (10th Cir.1965).

■ There must be substantial evidence to support the ALJ's findings of fact. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988). Evidence is not substantial if it is overwhelmed by other evidence, *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990), or if it constitutes mere conclusion (an issue particularly relevant here), *see Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989); *Bernal v. Bowen*, 851 F.2d at 299; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988); *Kent v. Schweiker*, 710 F.2d 110, 114 (3rd Cir.1983); *Freemyer*, 723 F.Supp. at 1419.

■ Substantial evidence must be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir.1987); *Teter v. Heckler*, 775 F.2d 1104, 1105 (10th Cir.1985); *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir.1985). It must be "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. at 401, 91 S.Ct. at 1427; *Ray v. Bowen*, 865 F.2d at 222. A substantial evidence test for review does not permit a simple search of the record for isolated bits of evidence which supports a preconceived conclusion. *Singletary v. Bowen*, 798 F.2d at 823. The record as a whole is considered. *Dollar v.*

*Bowen,* 821 F.2d 530, 550 (10th Cir.1987); *Orlando v. Heckler,* 776 F.2d 209, 213 (7th Cir.1985).

■ The Social Security Act does not require that the claimant's impairments prevent substantial gainful activity for twelve continuous months. *Singletary,* 798 F.2d at 821. Substantial gainful activity means performance of a "substantial service with a reasonable regularity." *Broadbent,* 698 F.2d at 413; *Rivas v. Weinberger,* 475 F.2d 255, 258 (5th Cir. 1973); *Freemyer,* 723 F.Supp. at 1420; *Claassen v. Heckler,* 600 F.Supp. 1507, 1510 (D.Kan.1985). Sporadic or irregular work is not substantial gainful activity. *Dix,* 900 F.2d at 138. "The ability of a claimant to perform jobs in the national economy must take into account the actual ability of the claimant to find and hold a job in the real world." *Parsons v. Heckler,* 739 F.2d 1334, 1340 (8th Cir.1984).

■ Moreover, the decision of the ALJ is also liable to be reversed if the incorrect legal standard was applied. *Gatson v. Bowen,* 838 F.2d 442, 449 (10th Cir.1988); *Williams v. Bowen,* 844 F.2d at 750. Failure to apply the correct legal standard or provide the court with sufficient basis to determine the legal principles on which the decision is based makes the decision subject to reversal. *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir.1984).

Accordingly, I find the ALJ's decision was not supported by sufficient evidence because: (1) the nature and severity of Evelyn Pettyjohn's injuries were such that she was incapable of substantial gainful activity on a continual basis, and (2) Ms. Pettyjohn was illiterate and therefore did not have residual functional capacity for sedentary work.

I also find that the treatment by the ALJ of the grid regulations was highly schematic and founded on several errors of law. I find that the ALJ erred in law because: (1) disability need not be continuous over a twelve-month period, (2) the ALJ erred in his interpretation of the grid regulations, in particular, his finding that the claimant's injuries did not "meet or equal" the grid requirements fails to appreciate, how, though not specifically mentioned, an injury can be *ejusdem generis* with the regulations, and (3) as a consequence of his unsupported factual finding that the claimant was not illiterate, the ALJ erroneously concluded that the claimant had residual functional capacity to perform substantial gainful activity.

The decision of the Secretary is therefore REVERSED and REMANDED for award of benefits.