**Patricia HIMMELREICH, Plaintiff,**

v.

**Joanne BARNHART, Commissioner of the Social Security Administration, Defendants.**

**No. CIV.A. 02–K–1954.**

United States District Court, D. Colorado.

Jan. 22, 2004.

Chrisilda R. Noel, Chris R. Noel, Atty at Law, Boulder, CO, for plaintiff.

Teresa H. Abbott, Social Security Administration, Office of General Counsel, Denver, CO, for defendant.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

This is an appeal from the final decision of the Social Security Administration Commissioner denying Claimant disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *ff.* Jurisdiction exists under 42 U.S.C. § 405(g). I have examined the complete record and considered carefully the legal arguments set forth by the parties in their briefs. Oral argument is unnecessary. The appeal is granted and the decision is reversed.

### *Discussion.*

Claimant Patricia Himmelreich was born in 1958 and was 44 years old at the time of the Administrative Law Judge's decision. She is a high school graduate, has a stepson and is the mother of two young children. She was gainfully employed from 1976 until July of 2000, working as a receptionist, bookkeeper and office manager.

The administrative record reflects a medical history related to multiple sclerosis dating back to April 6, 1999, when an MRI first showed nonspecific white matter lesions on Himmelreich's brain. *See* 9/10/99 Neurological Evaluation (R. at 214.) Himmelreich's symptoms included pain and numbness in her back and legs, and tingling while walking. Based on that MRI and the results of a subsequent spinal tap, Himmelreich's treating neurologist, Dr. Patricia Burcar, reported a diagnostic impression of "mild" multiple

sclerosis (MS). (*Id.*) Himmelreich's brain lesions remained stable for a period of six months, and as of December 1999, the official diagnosis was of benign MS. (R. 212, 211.) At that time, no specific immunomodulating or related treatment for her MS was deemed necessary. (R. 211.)

Himmelreich again saw Dr. Burcar in July of 2000, complaining of fatigue, numbness and tingling in her extremities. (R. 208.) Himmelreich was 32 weeks pregnant at the time, and Dr. Burcar's impression was that her complaints were more likely due to a viral infection and pregnancy than MS. (*Id.* at 209.) Himmelreich was ordered on bedrest, and stopped working. She was given Celebrex for pain.

In the fall of 2000 Himmelreich went to Dr. Burcar for a followup visit. She said the Celebrex was not much help for her pain, and reported she had begun having trouble with her memory. An MRI performed in December 2000 showed additional lesions on Himmelreich's brain. (R. 203–05.) In evaluation notes dated January 5, 2001, Dr. Burcar recommended beginning immunomodulating therapy to moderate the progression of her MS. (R. 203.) In light of Claimant's expressed fear of medications and needles, Himmelreich began with Copaxone, the mildest medication appropriate for her use at the time, which she administered by autoinjector. (*Id.*)

Complaining of fatigue, blurry vision and tingling in her feet up to her knees when walking, Himmelreich again saw Dr. Burcar in April 2001. (R. 199.) Himmelreich complained of red marks and bruises associated with administering the Copaxone. Claimant agreed to certain changes in her Copaxone regimen but declined medication for fatigue. (*Id.*) Citing Himmelreich's fatiguability, Dr. Burcar stated Claimant was not capable of returning to gainful employment at that time. (*Id.*) It was then (April–May 2001) that Himmelreich filed her application for social security disability benefits. (R. 88.)

Himmelreich returned to Dr. Burcar for another neurological examination in July 2001. (R. 196–97.) Dr. Burcar reiterated Himmelreich was incapable of returning to work due to her continued extreme fatiguability, prescribed Paxil for her mood swings, ordered additional tests and scheduled her for a followup visit in two weeks. (*Id.*)

Himmelreich underwent MRIs on both her brain and her lower back in December 2001. The brain MRI revealed a slight interval progression in number and conspicuity of lesions on her brain consistent with demyelinating disease. (R. 190–91.) The MRI of her lumbrosacral area revealed a mild broad-based disc bulge. (R. 232.) In a followup neurological evaluation in April 2002, Dr. Burcar noted some new left-sided weakness in addition to the numbness and tingling in her legs. In light of her continued constant fatigue[1] and the apparent activity of her MS despite her use of immunosuppressant Copaxone, Dr. Burcar considered Himmelreich "disabled permanently and totally from her multiple sclerosis." (R. 233.)

---

**1.** Dr. Burcar quantified Himmelreich's fatigue in April 2002 as follows:

> She [Himmelreich] is always fatigued and requires a 30 to 60 minute nap in the morning and another 30 to 60 minute nap in the afternoon just to handle her household tasks which she spreads out over many days. She can only clean one room at a time and cannot clean the entire house. It is the same with her washing which used to take one day, now takes three or four days to complete. Even paperwork seems to be overwhelming for her.
> (R. 232.)

### 1. *Administrative Proceedings.*

In October 2001, during the course of the progression of her disease but before the December 2001 examination confirming MRI, Himmelreich received a notice of disapproval of her April 2001 claim for disability benefits. (R. 63.) The Regional Commissioner denied Himmelreich's application finding that, based on the medical information available at that time, and while Himmelreich was unable to do the type of work she done before, at her age and education (12 years), she "[could] do other work." (*Id.*) The information reviewed in reaching this conclusion included Dr. Burcar's reports only to October 2, 2001, before the December MRI confirming a progression in her MS and the April 2002 conclusion of Dr. Burcar that Himmelreich was permanently and totally disabled due to MS.

After receiving her denial letter in October 2001, Himmelreich timely requested a hearing by an ALJ and a hearing was conducted on April 18, 2002. In addition to receiving the medical evidence documenting her medical history as of that date as well as the pain and fatigue questionnaires completed as part of her April 2001 application, the ALJ received a vocational determination and heard testimony from both Himmelreich and vocational expert, Doris Shriver. (R. 26–60, 110–112, 144–146.) In an 8–page decision issued May 30, 2002, the ALJ discounted both Himmelreich's testimony regarding the severity of her pain and her physical limitations as well as the medical opinions of Dr. Burcar. *See* R. 14–21. Finding neither fully credible in their assessment that Himmelreich's medical impairments prevented her from performing sedentary or light exertion work, the ALJ determined Himmelreich could, in fact, perform her past relevant work and denied her claim on that basis. (R. at 20, Finding 4.)

"[B]ased on the application filed on Aril [sic] 9, 2001," the ALJ's decision concluded, "the Claimant is not entitled to a Period of Disability and to Disability Insurance Benefits under Sections 216(i) and 223, respectively, of the Social Security Act." (R. at 21.)

### 2. *Standard of Review.*

While I may not substitute my judgment for that of the ALJ, *Jozefowicz v. Heckler,* 811 F.2d 1352, 1357 (10th Cir.1987), I must do more than merely rubberstamp his decision. *Pettyjohn v. Sullivan,* 776 F.Supp. 1482, 1484 (D.Colo.1991), *remanded for further findings on other grounds sub nom., Pettyjohn v. Shalala,* 13 F.3d 406, 1993 WL 516443 (10th Cir.1993) (unpublished decision), *on remand,* 874 F.Supp. 305 (D.Colo.1995). Decisions in which substantial evidence was disregarded or which are based on the culling of isolated bits of evidence from the record to support a preconceived conclusion will not satisfy the substantial evidence test. *Pettyjohn,* 776 F.Supp. at 1486. Proper review requires a "meticulous" examination of the record in its entirety. *Williams,* 844 F.2d at 750. If I find upon such review that the decision is not supported by substantial evidence, then I must reverse. *Id.*

### 3. *Claimant's Credibility.*

The ALJ found Himmelreich's testimony regarding her inability to sustain full time work "inconsistent" with her own testimony that she could walk two hours a day, stand two hours a day, and sit up to thirty minutes at a time and discounted her claim that she had trouble "focusing" secondary to pain because he found her pain complaints not fully credible. (R. 19.) As for Himmelreich's purported inability to work related to her unabating fatigue, the ALJ discounted the extent of the fatigue based on the fact that Himmelreich had been offered but refused medication for her fatigue. (*Id.*) The ALJ found this refusal

"not ... reasonable," declaring that "[a] person suffering from fatigue as severe as alleged would want to at least try a medication that could provide relief." (*Id.*)

On appeal, Himmelreich maintains the ALJ's credibility determinations are not "closely associated and affirmatively linked to substantial evidence on the record," citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (Pl's Opening Br. at 13.) In support of her position Himmelreich points to a letter from Dr. Burcar written just after the ALJ issued his decision and addressing specifically the points he made regarding her credibility. Letter, dated 6/13/02 (R. 244.) In this letter, Dr. Burcar corrects the misapprehension that Himmelreich "refused" treatment for her fatigue, noting that she tried courses of amantadine and Paxil for her fatigue with no relief. She also explained Himmelreich's "reluctance" to begin immunomodulating therapy (of which the ALJ was expressly critical, *see* Decision at 4 (R. at 17)) was "normal" and "appropriate" for patients with MS, of whom only 40% elect to proceed with such therapy because its side effects are potentially severe. The gist of Dr. Burcar's letter was to point out that Himmelreich suffers from an objectively documented course of MS, a disease closely associated with debilitating and untreatable fatigue even without objective signs on neurological evaluation. Here, Dr. Burcar continues, there are such objective signs, including physical symptoms of pain and tingling upon walking that require her to pace herself very carefully during the day and rest frequently.

Dr. Burcar's June 2002 letter was not before the ALJ when he issued his decision, but was provided along with other documentation to the Appeals Council. The Appeals Council decision apparently entailed an examination of the merits of the entire record, including the new letter, and its denial necessarily embodies a conclusion that the additional evidence fails to provide a basis for changing the ALJ's decision. *See* 20 C.F.R. § 404.970(b); *Ramirez v. Shalala*, 8 F.3d 1449, 1455 (9th Cir.1993). The Tenth Circuit has ruled that such "new evidence becomes part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence." *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir.1994). Accordingly, I must review this additional evidence and determine whether it would have changed the outcome in this case.

The Commissioner argues the additional evidence would not affect the outcome of the case because the information contained in Dr. Burcar's June 2002 letter was reasonably ascertainable from her treatment notes (R. 162–63, 189, 196, 211, 214, 203, 229, 232–33), (Def's Br. at 18). Paradoxically, the Commissioner argues elsewhere that Dr. Burcar's notes "did not mention or otherwise document that Plaintiff was having any problems with the medications prescribed." (Def's Br. at 9, 27). The Commissioner cannot have it both ways. Either there was sufficient evidence of Claimant's attempts to use medications to alleviate her fatigue before the ALJ to support his determination of Claimant's credibility without the letter from Dr. Burcar, or there was not. To the extent the Commissioner's position is that there was sufficient evidence before the ALJ on this issue, that is inconsistent with his evaluation of the evidence in his decision. The ALJ stated the he was "not persuaded as to the extent of the Claimant's alleged fatigue," because a "person suffering from fatigue as severe as alleged would want to at least try a medication that could provide relief." Rec. 19. That is precisely what did happen and the letter would likely cause the ALJ to reach a conclusion different from the one reached without it.

■ The evidence presented to the Appeals Council by the Claimant includes the letter from Dr. Burcar directly responding to the ALJ's concerns about Claimant's credibility and 52 pages of telephone consultation records detailing side affects with medications Claimant was taking for different symptoms related to her MS. Contrary to the cursory declaration of the Appeals Council that the new evidence does not provide a basis for changing the ALJ's decision, the new evidence may well have explained to the ALJ why the Claimant's eschewing of additional medications to alleviate her fatigue was both "normal" and "appropriate."

### 4. *Discounting of Dr. Burcar's Opinions.*

In denying Himmelreich's claim, the ALJ declined "fully [to] credit" Dr. Burcar's opinions regarding Himmelreich's fatigue and physical restrictions, offering two grounds for this conclusion. "First," the ALJ stated, "[Dr. Burcar's opinions] are conflicting." (R. at 18.) "On the one hand, Dr. Burcar states that the claimant is permanently disabled but then he [sic] gives the claimant work restrictions which would permit sedentary to light exertion work." (*Id.*) "Second," he observes, "the conclusion as to whether or not a claimant is disabled is ultimately that of the Commissioner." *Id.* (citing Social Security Ruling No. 96–5P). Relegating the latter truism to its appropriate place in the hierarchy of persuasive authority,[2] I consider only whether the record as a whole contains substantial evidence to support the ALJ's credibility determination. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994).

In support of his assessment that Dr. Burcar's opinions were conflicting, the ALJ began by describing Himmelreich's first visit to Dr. Burcar in September 1999 and noting Dr. Burcar's initial diagnostic impression of "mild" MS. At page 4 of his Decision, the ALJ continued:

In January 2001[3], the claimant had another MRI which showed some new lesions in the anterior medial aspect of the temporal lobe. [Citing R. 203.] Dr. Burcar suggested that the claimant begin immunomodulating therapy and the claimant reluctantly agreed to do so. (*Id.*) Dr. Burcar's clinical notes from April 6, 2001, indicate that he [sic][4] then opined the claimant was disabled secondary to her fatigue. [Citing R. 199.] Although, he states that she was actually slightly better, based on his examination. He also states that he offered the claimant medication to improve her fatigue but she refused. [Citing *id.*] He repeats his opinion regarding the claimant's disability on July 5, 2001, and April 3, 2002. [Citing R. 116 and 233.] He offers the claimant specific restrictions including lifting no more than twenty pounds occasionally, standing and walking one hour at a time for a total of four

2. It is axiomatic under the applicable federal regulations that "final responsibility" for making administrative determinations (such as what an individual's RFC is or whether an individual is "disabled" under the Act) rests with the Commissioner and not with medical sources whose opinions edify (and are often conclusive of) evidentiary determinations regarding the nature and severity of an individual's impairments. *See* 20 C.F.R. §§ 404.1527, 416.927(a). That Social Security Ruling No. 96–5P reiterates this point is unremarkable, and certainly does not serve as grounds for disregarding or discounting a treating physician's opinions in that regard.

3. The MRI actually took place in December 2000, with the visit to Dr. Burcar taking place in January, 2001. (R. 203.)

4. I note the ALJ's repeated use of the male pronoun is erroneous, but will not point it out each time it occurs in the quoted passage.

hours out of an eight hour day. [Citing R. 227, Medical Assessment dated 12/08/01.] The claimant is not able to climb, balance and crawl but is able to occasionally stoop, crouch and kneel. [Citing *id.*] The claimant is able to occasionally handle, finger and feel but needs to avoid heights, moving machinery, temperature extremes, dust, noise and fumes. [*Id.*]

■ These selective citations to the record create a misleading impression and do not constitute substantial evidence that Dr. Burcar's opinions are either actually conflicting or otherwise unworthy of credence. Dr. Burcar's statements in April 2001 that Himmelreich was "slightly better" after her first few months of immunomodulating treatment but still "incapable of gainful employment at this time" because of her fatiguability are not conflicting, nor is her assessment in December 2001 that Himmelreich could perform certain limited physical tasks such as lifting, standing and walking for periods of time. The December assessment, moreover, was dated December 8, 2001, six days *before* the MRI that revealed additional lesions on Himmelreich's brain and the likely progression, or at least continued activity notwithstanding the immunomodulating therapy, of her MS. A thorough reading of Dr. Burcar's treatment notes reveals an even and consistent approach to Himmelreich's MS diagnosis, beginning with the view in 1999 and 2000 that it was benign and "mild" to believing by late 2001–2002 that it was progressing and not responding particularly well to the immunomodulating therapy.[5] A credibility determination based on the selective and misleading recitation of the

record will not satisfy the substantial evidence test.

A treating physician's opinion is entitled to great weight because it "reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater* 923 F.Supp. 1373,1379 (D.Kan.1996); *see also Velasquez v. Apfel,* 28 F.Supp.2d 1285, 1287 (D.Colo.1998) (because the treating doctor had followed claimant for many years, he was in a superior position to evaluate claimant's restrictions and accordingly should have been afforded special weight). The law of the Tenth Circuit requires that the treating physician's opinion be given substantial weight unless good cause is shown to disregard it. *Goatcher v. United States Dept. of Health & Human Servs.,* 52 F.3d 288, 289–90 (10th Cir.1995). Treating physicians' "opinions are binding upon the ALJ 'unless they are contradicted by substantial weight to the contrary.'" *Hintz v. Chater,* 913 F.Supp. 1486, 1492 (D.Kan.1996)(quoting *Claassen v. Heckler,* 600 F.Supp. 1507, 1512 (D.Kan.1985) (court found that consultive physician who conducts one examination and issues report at odds with treating physician is accorded little weight)).

■ When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physician(s)' reports to see if they outweigh the treating physician's reports. *Goatcher,* 52 F.3d at 289–90. Consulting and non-treating physician's opinions are of suspect reliability and, if given greater weight than the opinions of the treating physician, may be grounds for reversal. *See Frey* 816 F.2d at 515 (non-treating

---

**5.** The ALJ's cursory and selective reading of Dr. Burcar's medical notes is revealed not only in his failure, generally, to acknowledge the shift in diagnosis from benign to active MS, but also in his repeated reference to Dr.

*Patricia* Burcar, whose full typewritten name and signature appears on every one of her neurological evaluations in the record, as a "he."

physician's opinions are of suspect reliability). The Tenth Circuit also requires the ALJ to consider the following:

1. the length of the treatment relationship and the frequency of the examination;

2. the nature and extent of the treatment relationship. Including treatment provided and the kind of examination or testing performed;

3. the degree to which the physician's opinion is supported by relevant evidence;

4. consistency between the opinion and the record as a whole;

5. whether the physician is a specialist in the area upon which the opinion is rendered, and;

6. other factors brought to the ALJ's attention which tend to support or contradict that opinion.

*Goatcher,* 52 F.3d at 290 (citing 20 C.F.R. § 404.1527).

The final decision of the ALJ does not indicate which of these factors, if any, he considered in rejecting the opinion of Dr. Burcar, the Claimant's treating neurologist, on questions relating to the severity and impact of her MS, including her objective physical symptoms as well as her fatiguability generally, and her resulting physical limitations. This failure leads me to conclude the ALJ failed to give Dr. Burcar's opinions the weight they were due under *Goatcher.*

### Conclusion

In light of these failures, as well as Dr. Burcar's June 2002 letter that is also part of the record, I conclude the May 2002 Decision of the ALJ is not supported by substantial evidence in the record and is REVERSED. The full and accurate consideration of the opinions of Claimant's treating neurologist as well as all new and material evidence regarding the progression and impact of Claimant's multiple sclerosis now in the record fully and exclusively support a finding of disability. No useful or efficient purpose would be served by a remand, and the Commissioner is ordered to award Claimant benefits.