Gary L. JACOBS, Plaintiff,

v.

Shirley S. CHATER, Commissioner of Social Security,[1] Defendant.

Civil Action No. 96–K–167.

United States District Court, D. Colorado.

Feb. 24, 1997.

---

**1.** Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L.

No. 103–296, 108 Stat. 1464 (1994), the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with § 106(d) of that law, Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the Defendant in this action.

**1562**

Christine Pacheco–Koveleski, Pueblo, CO, for Plaintiff.

Mark S. Pestal, Assistant U.S. Attorney, Denver, CO, Frank V. Smith, III, Acting Chief Counsel, Denver, CO, for Defendant.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

Gary L. Jacobs filed this action seeking judicial review of the administrative decision of the Defendant, Commissioner of Social Security, denying his applications for Social Security Disability Insurance (disability) benefits and for Supplemental Security Income (supplemental) benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433 and 1381–1383.

Jurisdiction exists under 42 U.S.C. § 402(g). I affirm.

### I. *Background.*

Jacobs, born May 23, 1951, has a high school education and attended one year of community college. He alleges disability

since April 16, 1991, caused by late effects of amputation of fingers on his left hand, foot and back pain, and alcoholism.

On June 21, 1993, Jacobs filed for Title II disability benefits and Title XVI supplemental benefits. (R. at 103–110). Jacobs has not worked since losing his job on April 16, 1991 for reporting late to work. (R. at 146.) He claimed he became unable to work due to his disabling condition on that date. (R. at 103–110.)

In the Disability Report dated June 20, 1993, Jacobs stated the source of his disability was the amputation of several digits on his left hand, the corrective surgery done on his left foot, and a back injury. (R. at 162.) His explanation as to why these conditions kept him from working was the pain·emanating from his back, feet and hands after a day's work. (*Id.*)

In 1974 Jacobs lost several fingers on his left hand in an accident at home. (R. at 170.) In 1976 he broke his right toe and had corrective surgery for callouses on the left foot. (R. at 176.) Jacobs also claimed his foot condition stemmed from his work as a rail finisher at Colorado Fuel and Iron Corporation. (R. at 167.)

In the same report, Jacobs attributes his back condition to two circumstances, the physically demanding work he performed as a rail finisher and roofer, and an automobile accident in which he was involved in 1980, in which he suffered head and spinal injuries. (R. at 167, 171.) Jacobs received treatment for those injuries from Dr. R.J. Black Schultz, an orthopaedic surgeon, but asserts his back did not improve much. (R. at 171.)

On June 21, 1993, the Social Security Administration ("SSA") Interviewer commented in the Rationale section of Jacobs' Work Activity Report, that Jacobs' claims should be denied based upon his level of work activity and previous earnings and the fact that he left his previous work for reasons other than his disability. (R. at 149.) On July 5 and July 7, 1993, to bolster his disability claim, Jacobs submitted additional information, a Daily Activities Questionnaire and Personal Pain Questionnaire. (R. at 150, 158.)

In the Daily Activities Questionnaire, Jacobs outlined how his "disabling condition" affected his daily routine and social activities. He stated he was able to do household chores when feeling good but experienced pain if he overextended himself. (R. at 151–52.) He had little social life, due to his physical and financial condition. (R. at 152.) In the Personal Pain Questionnaire, Jacobs stated he suffered from "dull to sharp" back, foot and hand pain, exacerbated by cold weather. (R. at 158.)

On September 10, 1993, two Social Security Notices were sent to Jacobs, denying his claims for disability benefits and supplemental benefits. (R. at 114–16, 117–120.) The SSA found, although Jacobs' physical condition was limiting, he remained capable of performing certain work-related activities that did not require heavy lifting or fine manipulation with his left hand. (R. at 117, 120.)

Jacobs' requests for reconsideration were similarly denied. (R. at 135–37, 138–40.) He filed a timely request for an administrative hearing on January 7, 1994. (R. at 142.) The hearing, held on December 13, 1994, included vocational expert testimony. The Administrative Law Judge ("ALJ"), Lloyd E. Hartford, found Jacobs was not disabled within the meaning of the Social Security Act.

Jacobs filed a Request for Review of Hearing Decision with the Appeals Council. After considering additional legal argument, the Appeals Council concluded there was no basis to grant Jacobs' request for review, making the ALJ's ruling the Commissioner's final decision. On January 26, 1996, Jacobs filed the subject complaint for judicial review of the Commissioner's decision.

## II. *Standard of Review.*

Appellate standards limit review to two determinations. *Hamilton v. Secretary of Health and Human Servs.*, 961 F.2d 1495, 1497 (10th Cir.1992) (citing *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)). These are: does the record as a whole contain substantial evidence to support the Commissioner's final decision and did the Commissioner apply the correct legal standard? *Id.* at 1497. "The [Commissioner's] findings

stand if they are supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hamilton,* 961 F.2d at 1498 (quoting *Broadbent v. Harris,* 698 F.2d 407, 414 (10th Cir. 1983)).

The court must neither reweigh the evidence nor substitute its judgment for that of the ALJ, *Jozefowicz v. Heckler,* 811 F.2d 1352, 1357 (10th Cir.1987), but it will scrutinize evidence that constitutes mere conclusion, *Bernal v. Bowen,* 851 F.2d at 299.

### III. *Administrative Law Judge's Decision.*

■ The issue for determination was whether Jacobs was disabled and entitled to a period of disability, disability insurance benefits and supplemental security income under the Social Security Act. "Disability" is defined as "the inability to perform substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505 and 416.905 (1995).

To meet this definition, a claimant must have a "severe impairment, which makes [him or her] unable to do [his or her] previous work or any other substantial gainful activity which exists in the national economy." *Id.* In determining whether a claimant is able to do any other work, his or her "residual functional capacity ... age, education and work experience" are considered. *Id.*

In assessing a disability claim, a sequential process is followed, beginning with the determination as to whether the claimant's work activity is substantial. 20 C.F.R. §§ 404.1520 and 416.920. Second, consideration is given to whether the claimant's impairments are "severe" and, if so, whether he or she still maintains the "residual functional capacity" to perform other work, given the claimant's transferable skills, age, education and work history. *Id.* If a determination can be made at any step that the claimant is or is not disabled, further review is not necessary. *Id.*

The ALJ followed the sequential process, reviewed the relevant evidence, and weighed the vocational expert's opinion, the medical evidence, and Jacobs' testimony. He found Jacobs was not disabled within the meaning of the Social Security Act because he still retained the residual functional capacity to do less demanding jobs which existed in significant numbers. (R. at 15–27.)

### A. *Substantial Gainful Activity.*

The relevant regulations state: "If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled...." 20 C.F.R. §§ 404.1520(b) and 416.920(b).

Jacobs worked from 1969 to 1979 as a laborer and a rail finisher, (R. at 43), on oil rigs from September to October 1980, and from 1981 to 1982 as a roofer, removing old shingles and tar paper, and hauling shingles onto roofs, (R. at 44).

Jacobs' next occupation was as a bricklayer. His testimony indicated he worked steadily in this occupation for about four years. (R. at 45.) In addition to bricklaying, beginning in 1985, Jacobs started a part-time job as an auto mechanic with Shifflett Stucco, which lasted for about five years (R. at 45.) Jacobs' last job, before he filed for disability and supplemental security benefits, was with Agreen Trucking. He was terminated in 1991.

The ALJ concluded Jacobs had not engaged in any substantial work activity since April 16, 1991. (R. at 25.)

### B. *Assessment of Impairments.*

The ALJ made the second inquiry, namely, whether there were any physical or mental impairments, alone or in combination which could qualify as "severe." (R. at 25.) When evaluating whether an individual has a severe impairment, the finder of fact is directed to inquire if the claimant's impairment, or combination of impairments, significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Jacobs claimed one of his impairments was alcohol abuse. (R. at 16.) The ALJ found

the alleged alcoholism "would not impose more than minimal restrictions on his ability to perform basic work-related activities," (R. at 18), and, as such, constituted a "non-severe" impairment. This conclusion was based upon his review of reports submitted by Dr. Shirley Salvatore, the physician who treated Jacobs at the Pueblo Community Health Center between May 26, 1994 and September 6, 1994, and Jacobs' testimony. (R. at 17–18.)

In a May 26, 1994 report, Dr. Salvatore stated Jacobs was disabled due to his chronic joint and back pain, and alcoholism. (R. at 202.) The same report advised Jacobs to quit "smoking and drinking". (R. at 201.) Three follow up reports of Dr. Salvatore on June 2, 1994, July 1, 1996, and August 2, 1996, made no mention of Jacobs' alcoholism. The ALJ asked Jacobs whether he had an alcohol problem. (R. at 66.) Jacobs responded that he drank, but "not every night" and "tried to stay away from that." (Id.)

The ALJ found the medical evidence established Jacobs had "severe degenerative disc disease, lumbosacral spine without evidence of disk herniation; nonspecific arthritis in his hands; left foot drop secondary to peroneal nerve injury, improving." (R. at 18, 25.) He found "these conditions placed more than minimal limitation on claimant's ability to perform work-related functions." (R. at 16.) Although these physical impairments were found to be "severe", the ALJ concluded Jacobs' impairments did not individually or in combination, meet or medically equal the level of severity of any impairment listed in Appendix 1, Subpart P, Regulations No. 4. (20 C.F.R. §§ 404.1520(d) and 416.920(d))." (R. at 18, 25.)

### C. *Residual Functional Capacity.*

 Because a determination could not be made based solely on medical considerations, the ALJ next determined whether Jacobs "retain[ed] the residual functional capacity for past relevant work, and, if not, for any other work existing in significant numbers in the national economy." (R. at 18.) [2] Such evaluation involves the review of past relevant work, and possible work available in the future given the claimant's physical capabilities.

In assessing Jacobs' residual functional capacity, the ALJ examined the credibility of his testimony regarding the severity of pain emanating from his physical impairments. The ALJ acknowledged: "If claimant's testimony concerning pain and limitations secondary to such pain, and his inability to function throughout a normal workweek is [sic] accepted as spoken, a finding of 'disabled' would necessarily follow." (R. at 18.) However, the ALJ found Jacobs "had significantly overstated both the duration and level of his pain and subjective complaints, and also his limitations." (Id.)

 The ALJ set out the factors to be considered when assessing evidence of pain and other subjective symptoms. *See Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987); 20 C.F.R. §§ 404.1529(a) and 416.929(a). Regard is had to all evidence presented relating to subjective complaints, including the claimant's work record and information and observations by treating and examining physicians and third parties. Consideration is given to matters such as the nature, duration and frequency of pain, precipitating and aggravating factors, medication, treatment, functional restrictions and the claimant's daily activities. *Luna,* 834 F.2d at 166.

The ALJ outlined his detailed assessment of the factors relevant to Jacobs' pain and claim of disability. (R. at 19–22.) The work profile of Jacobs was found to add no probative weight to the credibility of his allegation of disability. (R. at 20.) The ALJ found his level of daily activities inconsistent with his

**2.** If we cannot make a decision based on … medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.
20 C.F.R. §§ 404.1520(e) and 416.920(e).

If you cannot do any work you have done in the past because you have a severe impairment(s), we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you cannot, we will find you disabled.
20 C.F.R. §§ 404.1520(f)(1) and 416.920(f)(1).

allegation of disability. (*Id.*) He was persuaded that Jacobs' level of pain had been grossly overstated, noting that he did not appear to be experiencing any pain or to be uncomfortable at the hearing, despite his testimony to the contrary. (*Id.*) Reports in the record did not indicate that Jacobs had complained to his treating physician or any other doctor of the severe and intense pain to which he testified. (*Id.*)

With respect to precipitating and aggravating factors, the ALJ noted Jacobs had been advised by orthopaedic surgeon, Dr. R.J. Black Schultz on July 22, 1993, to wear a low back support and molded foot support, but had failed to follow this advice. (R. at 210–12.)

On August 11, 1993 Dr. Richard Hamill, an orthopaedic specialist, was of the opinion that Jacobs had no significant orthopaedic problems which would "interfere with his return to gainful employment at any of the jobs previously held without need for any type of protection." (R. at 189.)

On September 28, 1993, Jacobs was examined by Dr. Robert Young II, the orthopaedic surgeon who performed the amputation surgery on Jacobs' left hand in 1974. (R. at 197.) Dr. Young II noted Jacobs had pain in his hands and spine. (R. at 191.)

Between May and September 1994, Jacobs presented to Dr. Shirley Salvatore on five occasions. In a Statement of Physician dated September 6, 1994, Dr. Salvatore reported Jacobs to be "disabled" due to chronic back pain, joint pain and alcoholism. (R. at 213.) Although Dr. Salvatore noted that Jacobs' treating physician for his back and joint pain was Dr. Robert Young II, the record contained only one report from that doctor dated November 29, 1993, which stated he had not seen Jacobs "since 1984 up until a visit on September 28, 1993." (R. at 190.) There is no indication in the record that Jacobs had returned to see Dr. Young II, nor had he returned to see orthopaedic surgeon Dr. Black Schultz since July 22, 1993.

The ALJ noted inconsistencies between Dr. Salvatore's statement in the September 6, 1994 report that Jacobs was disabled and the clinical notes of that doctor. (R. at 22.)

Moreover, the finding of "disability" was inconsistent with the findings of specialist Dr. Black Schultz that Jacobs was only limited in lifting, (R. at 212), and the record as a whole, (R. at 22).

The ALJ found Jacobs had "the residual functional capacity to perform the physical exertion requirements of work except for lifting and/or carrying more than ten pounds occasionally and standing and/or walking (with normal breaks) for more than two hours in an eight-hour workday." (R. at 25.) He found Jacobs capable of sitting for about six hours in an eight-hour work day. (*Id.*) His fine, but not gross, manipulative skills were found to be limited. (R. at 26.)

■ Once the ALJ found Jacobs had the residual functional capacity to work, there was a shifting of the burden, the Commissioner was required to prove there was a significant number of jobs in the economy which Jacobs could perform given his physical impairments. *See Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir.1987). The ALJ exercised his prerogative to use a vocational expert to help evaluate those prospective jobs. *See* 20 C.F.R. §§ 404.1566(e) and 416.966(e).

At the hearing, the ALJ questioned vocational expert Tonya Wheatley–Herman about Jacobs' past work and whether he possessed skills that were transferable. Wheatley–Herman's opinion was Jacobs' past jobs as rail finisher and hot carrier had no transferable skills. (R. at 89.) However, she opined, his jobs as a roofer, and an automobile mechanic, would be considered "skilled work" with transferable skills. (R. at 90.)

The ALJ asked Wheatley–Herman whether from those skilled jobs Jacobs possessed any transferable skills, assuming he had no physical limitations, and given his age, education, and work experience. She replied such transferable skills were the ability to follow directions, work with others, and use tools. (*Id.*)

The ALJ then inquired, accepting Jacobs' testimony as fully credible, what past jobs he would be able to perform. (R. at 93.) Wheatley–Herman opined Jacobs could not return to his past work. (*Id.*) The ALJ

asked if, assuming an individual of Jacob's age, education and past relevant working experience were capable of performing the exertional demands of sedentary work as defined in the regulations, there were any jobs which he could perform. (R. at 95.) In response, Wheatley–Herman mentioned two jobs, a charter and a surveillance systems monitor, both of which existed in significant numbers. (R. at 95–96.) She opined Jacobs, with his limitations, could perform these two jobs. (R. at 98.) However, she stated, if he had pain "on a scale from five up to a 20," he would not be able to do either of the two jobs. (*Id.*)

The ALJ next asked the vocational expert if, assuming an individual of Jacob's age, education and past relevant working experience, and assuming such individual capable of performing sedentary work, there existed in significant numbers any entry level jobs of an unskilled nature. (*Id.* at 98.) Wheatley–Herman testified such individual could perform the jobs of check cashier, table worker and sorter, all of which existed in large numbers. (R. at 100.)

The ALJ was persuaded that Jacobs could, within his established limitations, perform the check cashier and sorter jobs and that these jobs existed in significant numbers in the regional and national economy. (R. at 24–25.) Therefore, he concluded Jacobs was not "disabled" within the meaning of the Social Security Act. (R. at 25.) As such, Jacobs was not entitled to a period of disability, disability insurance benefits or supplemental security income. (R. at 27.)

## IV. *Review.*

■ Contrary to Jacobs' assertions, the ALJ evaluated his subjective complaints of disabling pain in accordance with the relevant regulations and case law precedent.

The ALJ properly considered the medical evidence and assessed Jacobs' credibility regarding his pain. *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir.1990) (finding that in determining whether a claimant's pain is disabling, the Secretary was entitled to examine the medical record and evaluate the claimant's credibility).

The ALJ's decision to give controlling weight to some of the medical reports and not others was appropriate. *See* 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2); *see also Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir.1994) ("medical evidence is not dispositive but the ultimate issue of disability is reserved to the commissioner").

The ALJ noted the inconsistencies in the reports of Dr. Salvatore and expressed "specific and legitimate reasons" for rejecting the opinion of that doctor that Jacobs was disabled. *See Hamilton*, 961 F.2d at 1498.

The ALJ correctly gave less weight to the opinion of Dr. Salvatore, which was not consistent with the record as a whole, than to those of Dr. R.J. Black Schultz and Dr. Robert Young II. *See* 20 C.F.R. §§ 404.1527(d)(4) and 416.927(d)(4).

He also appropriately gave more weight to the opinion of the orthopaedic specialist Dr. Black Schultz concerning the area of his specialty than to that of Dr. Salvatore who is not a specialist in the field. *See* 20 C.F.R. §§ 404.1527(d)(5) and 416.927(d)(5). I therefore find the ALJ's determination that Dr. Salvatore's opinion was less credible than those of Drs. Black Schultz and Young II to be well-supported.

The ALJ correctly took into account other relevant factors beyond objective medical evidence such as evidence about Jacobs' medication, adherence to physician's instructions, treatment or lack thereof, and daily activities. *See Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir.1995); *Luna*, 834 F.2d at 165–66.

■ Taking the evidence as a whole, the ALJ concluded Jacobs had "significantly overstated both the duration and level of his pain and subjective complaints, and also his limitations." (R. at 18.) A credibility determination made by the ALJ is generally considered as binding upon review. *Talley*, 908 F.2d at 587.

■ In his brief, Jacobs argues he lacked funds for the back brace, special orthopaedic shoes and prescribed pain medication. However, he did not testify to this effect at the hearing. Moreover, even if he had so testified, inability to pay for treatment does not

necessarily preclude an ALJ from considering the failure to seek medical attention in credibility determinations, especially where the claimant could apparently afford beer and cigarettes. *See Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir.1988).

 The ALJ found Jacobs could not return to any of his previous occupations because of his physical disabilities. He noted if Jacobs' physical impairments produced the kind of pain alleged by him, a finding of disability would necessarily follow. However, the ALJ found this was not the case and Jacobs had the residual functional capacity to perform certain jobs. I uphold this finding as supported by substantial evidence.

Jacobs asserts, although the ALJ correctly described his physical limitations in posing the hypothetical to the vocational expert, he ignored the opinion of the expert that there would be no jobs in the economy that Jacobs could perform. Although the ALJ's questioning of the vocational expert was somewhat circumlocutious, he properly relied on her testimony in determining what jobs Jacobs could perform and that such jobs existed in significant numbers.

Jacobs is correct in stating that Wheatley–Herman indicated he would have difficulty performing certain work if his testimony regarding his pain were accepted as true. However, the ALJ determined Jacobs' subjective complaints of pain lacked credibility, a finding supported by the record. Therefore, the ALJ was not bound by that aspect of the expert's opinion which was based on accepting Jacobs' testimony as true.

The situation is analogous to that in *Kelley v. Chater*, 62 F.3d 335, 337–38 (10th Cir. 1995). There, an expert testified that the claimant could not perform certain jobs if, as he asserted, he needed a daily two hour nap. The appeals court found the ALJ's determination that the claimant's testimony lacked credibility to be well supported by the record. Accordingly, it upheld the ALJ's determination that there were a number of jobs which the claimant could perform. *See also Talley*, 908 F.2d at 588 (noting that the ALJ was not bound by the opinion of a vocational expert which was based on a hypothetical which did not set forth only impairments which had been accepted as true by the ALJ).

## V. *Conclusion.*

For the aforesaid reasons, I conclude the ALJ's decision was supported by substantial evidence and the correct legal standard was applied. Accordingly, I AFFIRM. I therefore do not reach the issue of Jacobs' request for attorney fees pursuant to the Equal Access to Justice Act.