Agnes **FESSLER**, Plaintiff,

v.

Kenneth S. **APFEL**,[1] Commissioner of Social Security, Defendant.

No. Civ.A. 94–K–2933.

United States District Court, D. Colorado.

July 14, 1998.

---

1. Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–296, 108 Stat. 1464 (1994), the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with § 106(d) of that law, Kenneth S. Apfel, Commissioner of Social Security, is substituted for Donna E. Shalala,

Secretary of Health and Human Services, as the Defendant in this action. Accordingly, the Defendant in this case should now be reflected as

"KENNETH S. APFEL, Commissioner of Social Security."

Frederick W. Newall, Colorado Springs, CO, for Plaintiff.

Regina Rodriguez, Assistant United States Attorney, Denver, CO, for Defendant.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

### I. *Procedural Background*

Agnes Fessler appeals the final decision of the Commissioner of Social Security rejecting her application for Social Security disability insurance benefits. Jurisdiction exists under 42 U.S.C. § 405(g).

The last date Fessler met the insured status requirements for benefits was December 31, 1988. (R. at 22, 47–49.) She filed her first application for disability benefits on May 15, 1991, (R. at 92–94), claiming she was disabled because of a back injury and cancer, (R. at 105). The Social Security Agency (SSA) denied this application and her request for reconsideration for lack of evidence and because she was not treated for cancer until 1990. (R. at 96, 103.) She filed a second application for disability insurance benefits on September 3, 1992, (R. at 125–27), which SSA also denied because it did not raise issues beyond her 1991 claim, (R. at 129). After SSA denied her request for reconsideration on April 21, 1993, (R. at 153–56), Fessler requested a hearing with an Administrative Law Judge (ALJ) on May 19, 1993, (R. at 176–77).

After a hearing on February 2, 1994, the ALJ denied benefits on May 24, 1994. On October 26, 1994, the Appeals Council denied Fessler's request for review, making the ALJ's decision the final decision of the Commissioner. Fessler then filed this appeal on

December 27, 1994, contending the Commissioner's denial of benefits lacked the support of substantial evidence and was contrary to law. (Compl.¶ 6.)

## II. *Factual Background*

Fessler had been working as a school bus driver and aide in Florida for 12 years before injuring her back in November of 1983. (R. at 54–55.) She has not worked since.

Fessler first sought treatment for her injury from Jeffrey Beitler, M.D., on November 28, 1983. He diagnosed a lumbar sprain and strain and initially ordered one week of rest from work. (R. at 178.) One week later, Dr. Beitler ordered complete bed rest and muscle relaxants, after noting Fessler had failed to rest as previously ordered. (R. at 179.) On December 12, 1983, she reported no improvement. Dr. Beitler detected decreased lordosis (curvature of the lumbar and cervical spine)[2] and admitted her to the hospital. (R. at 180.) By December 29 Fessler had a full range of motion, normal neurological examination, and no gait disturbance, and Dr. Beitler stated she could return to work with no restrictions of activity. (R. at 182.) Fessler's last examination by Dr. Beitler was on January 5, 1984, when she reported pain when returning to work. He scheduled another appointment 2–3 weeks later after Fessler's leave of absence to go to Denver. However, she did not return to see Dr. Beitler. (R. at 183.)

In early 1984, Fessler left her job in Florida to move to Grand Junction. (R. at 56.) On May 7, 1984, she was admitted to the hospital after experiencing extreme back pain that made walking impossible. (R. at 57.) During her four-night stay, the attending physician, L.D. Kareus, D.O., diagnosed her with sciatic neuralgia (pain radiating from the back into the leg) secondary to a probable herniated nucleus pulposus in the L5–SL area (herniated disc), obesity, and mild hypertension. Fessler's condition improved with bed rest and traction, and Dr. Kareus discharged her with prescriptions for Ascription, Soma Compound with Codeine

and Naldecon, as well as iron supplements and a diet plan. (R. at 185.)

On September 6, 1984, after moving to the Colorado Springs area, Fessler began treatment with Robert Kotch, D.O. His notes indicate she went to his office at least twice per week for treatment until November 8, 1984. (R. at 223–26.)[3] Dr. Kotch ordered x-rays, (R. at 227–28), a CAT scan of the lumbar spine, (R. at 231), and consultations with orthopedic surgeon Roland Brandt, D.O., and neurologist Mario Oliveira, M.D. Dr. Brandt found tenderness in the low lumbar area, an absence of the Achilles reflex on the right side and restricted motion with forward flexion. However, he found no abnormal curvatures and her iliac crests (expanded upper border of the hip bone) were of equal height. Based on this examination, Dr. Brandt diagnosed a herniated nucleus pulposus L5–S1 on the right side. (R. at 230.)

Dr. Oliveira diagnosed a right S1 radiculopathy (disease of the nerve roots) related to her intervertebral disc disease. He recommended conservative treatment in light of Fessler's weight, including traction, weight reduction, and anti-inflammatory drugs. (R. at 234.) In a letter dated December 4, 1984, Dr. Kotch stated Fessler "must be classified as temporary total disability [sic]," based on Dr. Oliveira's diagnosis. (R. at 232.)

The record contains no documentation of treatment with Dr. Kotch after December 4, 1984. The only additional document in the record relating to Fessler's back condition is a report Dr. Brandt prepared for the Broward County School Board's worker's compensation insurance carrier on March 26, 1986. (R. at 237–38.) The report indicates Dr. Brandt continued to feel Fessler had a herniated disc, but her symptomatology was minimal and gave her little difficulty with day-to-day activities. He noted her forward flexion had improved, and her spine continued to show no abnormal curvatures. *Id.* Based on this examination, Dr. Brandt completed an Estimated Functional Capacity

---

**2.** All definitions of medical terms are taken from Dorland's Illustrated Medical Dictionary (1974).

**3.** Although the Exhibits List describes these documents as medical records from Eisenhower

Hospital, Fessler's attorney indicated at the administrative hearing that they are Dr. Kotch's office notes. (R. at 51.)

Form, stating Fessler could occasionally lift and carry up to 24 pounds, could sit for 8 hours, stand for 4 and walk for 4 with rests in an 8–hour work day. He concluded she could not return to her former job as a school bus driver and aide, but could return to other full-time work. (R. at 239–40.)

From August 29 to September 19, 1986, R.A. Brumfield, M.D., treated Fessler for pain in her right shoulder. He diagnosed an anterior impingement, and prescribed Darvocet–N and Clinoril. (R. at 246.) Her symptoms were temporarily relieved with an injection of Kenalog and Xylocaine, and he ordered her not to perform significant work with her shoulder. Dr. Brumfield discussed surgery with Fessler but ruled it out because it would not guarantee a good result and because of the expense for her, since her insurance would not cover the full cost. (R. at 246–47.) There are no records of additional treatment by Dr. Brumfield after September 19, 1986.

At the hearing before the ALJ, Fessler testified the pain she suffered required her to rest every afternoon in order to complete her household chores. (R. at 61.) She stated she listened to relaxation tapes approximately three times per week in order to keep her mind off the pain. (R. at 68–69.) When she felt she would be unable to do housework in the morning, she would set the breakfast table and prepare the coffee pot the previous evening. (R. at 67.) While standing was more comfortable for her than sitting, she had to alternate positions during the day to avoid discomfort. (R. at 70.) Fessler also complained of symptoms relating to hypertension and diabetes. (R. at 77–79.) Fessler's husband testified, corroborating her testimony and elaborating upon the limitations her injury placed upon her activities. (R. at 80–83.)

In a Daily Activities Questionnaire completed June 11, 1991, Fessler stated on an average day she cooked three meals, made snacks, and did house cleaning, clothes and dish washing, and most of the shopping. She also indicated she took a one-hour nap at noon each day and had no problems caring for her personal needs although they took longer than they had before her injury. (R. at 119–20.)

The ALJ found Fessler was unable to return to work as a school bus driver and aide. Based upon the Estimated Functional Capacity form completed by Dr. Brandt and the testimony of a Vocational Expert (VE), however, he concluded she was capable of performing the full range of light work and the Commissioner had met his burden of showing she was capable of performing work that existed in significant numbers in the economy. (R. at 39.) He found Fessler's subjective complaints not credible, and that her husband's testimony lacked sufficient weight to overcome her lack of credibility. (R. at 37–39.)

### III. *Standard of Review*

In reviewing a final decision by the Commissioner of Social Security, the court determines whether the Commissioner applied the correct legal standards and whether the record contains substantial evidence supporting the Commissioner's decision. *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1497 (10th Cir.1992). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 1498 (quoting *Broadbent v. Harris,* 698 F.2d 407, 414 (10th Cir.1983)). The reviewing court cannot reweigh the evidence, *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 800 (10th Cir.1991), but must meticulously examine the record in its entirety, *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988).

### IV. *Discussion*

#### A. *Development of the Record*

Fessler argues the ALJ's failure to resolve the discrepancy between the reports of Drs. Brumfield and Brandt when determining her disability was a failure adequately to develop the record. (Pl.'s Opening Br. at 6); *see Thompson v. Sullivan,* 987 F.2d 1482, 1491–92 (10th Cir.1993). This argument is without merit. Fessler received a hearing lasting one hour and ten minutes that ended after the scheduled time because of her late arrival. (R. at 72.) Her attorney and the ALJ asked her questions about her impairment, the treatment she sought, (R. at 55–58), and the impact the impairment had on

her daily activities. (R. at 60–70.) The ALJ relied upon a report prepared by one of Fessler's examining physicians to assess her Residual Functional Capacity (RFC). (R. at 33–34.)

■ An ALJ must order further examinations of a claimant when there is no evidence upon which to base an assessment of RFC, *Thompson*, 987 F.2d at 1491, and must ask enough questions at the hearing to determine the nature of the claimed impairments, the ongoing treatment and medications, and the impact of the alleged impairment on the claimant's daily activities, *Id.* at 1492 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1375 (10th Cir.1992)). An ALJ has satisfied the duty to develop the record when the claimant has had an opportunity to speak extensively on the nature of her impairments and their impact on her activities, and the documentary record contains the pertinent facts needed to inform the ALJ. *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir.1994). I find the documentary evidence together with the testimony taken at the hearing satisfy the duty to develop the record.

Fessler also maintains the ALJ should have developed the record regarding an onset issue presented by the case. (Pl.'s Br. at 7–8.) She does not indicate, however, what additional documentary evidence is necessary, or how an order for an examination would help to develop the record in this regard. Nor did Fessler's attorney identify the onset issue at the hearing when given the opportunity to do so. (R. at 50–51.)

■ "[I]n a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir.1997). Moreover, it is illogical to insist upon development of the record as to the onset of a disability that the Commissioner has determined did not exist. To remand for consideration of further evidence, a court must normally determine that the evidence would have changed the decision. *Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir.1991). Here, I find evidence as to the onset of the alleged disability would not alter the Commissioner's finding of no disability.

B. *Credibility Determination*

1. *The ALJ applied the correct legal standard in determining the credibility of the claimant.*

■ Fessler argues the ALJ applied the wrong legal standard in assessing the credibility of her testimony regarding disabling pain. She asserts he was required to hear her complaints of pain once she documented an impairment reasonably capable of producing her alleged pain. *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987); (Pl.'s Br. at 9–10.) The Commissioner argues the ALJ relied upon all the evidence in determining Fessler's claims of disabling pain were not credible, and his assessment of credibility is entitled to great weight because he explained the basis of his conclusion. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir.1988); *Hamilton*, 961 F.2d at 1498–99. The Commissioner maintains the ALJ's evaluation of her subjective claims was in accordance with *Luna* because the medical evidence did not prove her pain was disabling. (Def.'s Ans.Br. at 5–13.)

■ In order to have her subjective complaints considered, a claimant must first prove, through objective medical evidence, that she has a pain-producing impairment. *Luna*, 834 F.2d at 163. Then, the decision maker must determine whether the impairment could reasonably be expected to produce the alleged pain. *Id.* If the nexus between the pain and the impairment is insufficient, the claimant cannot receive benefits based upon disabling pain. *Id.* If the nexus is sufficient, then the ALJ must consider the objective and subjective evidence to determine whether the pain is disabling. *Id.* Only at that point is the credibility of the witness an issue. *Id.* The medical evidence need not prove that the claimant's condition would necessarily cause the degree of pain claimed, only that it may be expected to cause some pain. *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir.1993). However, when the medical evidence fails to corroborate the severity of the pain alleged, the weight given the subjective evidence may be affected. *Luna*, 834 F.2d at 164–65.

The ALJ applied the correct legal standard for assessing Fessler's credibility. He first reviewed the objective medical evidence and concluded it established the plaintiff had a pain-producing impairment. (R. at 25–31.) The ALJ then determined the impairments could reasonably have been expected to produce the alleged pain. It was only when considering all the evidence as to whether Fessler suffered disabling pain that he determined her testimony was not credible because of inconsistencies between her testimony, the medical evidence and her daily activities. (R. at 31.)

2. *The ALJ based his credibility determination upon substantial evidence.*

 Fessler criticizes the ALJ's credibility determination as a "conclusion in the guise of findings," (Pl.'s Br. at 11), because he stated the passage of five years between her date last insured and the hearing would cause him to give less weight to her subjective complaints. (Pl.'s Br. at 8–9; R. at 48–49.) Fessler asserts the other reasons given by the ALJ for finding she was not credible were a "rationalization" of this position. She argues evidence of the need to have the worker's compensation insurance carrier approve treatment and of lack of funds excuses the length of time between treatments. (Pl.'s Br. at 9.) She also avers her limited daily activities were consistent with the other evidence, and her unsuccessful search for employment required by worker's compensation was consistent with her claims of disability. (Pl.'s Br. at 11.)

The Commissioner replies the ALJ's credibility determination had support because Fessler failed to follow a physician's orders, sought medical treatment infrequently, left her job for reasons other than disability, and engaged in daily activities inconsistent with claims of disabling pain. (Def.'s Br. at 5, 7–8, 13.)

 " 'Credibility is the province of the ALJ.' " *Musgrave*, 966 F.2d at 1376 (quoting *Brown v. Bowen*, 801 F.2d 361, 362–63 (10th Cir.1986)). Therefore, the credibility determination is generally considered as binding upon review. *Jacobs v. Chater*, 956 F.Supp. 1560, 1567 (D.Colo.1997) (citing *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990)). While courts will give great deference to an ALJ's findings regarding credibility, these findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988). In assessing credibility, an ALJ may consider factors including the frequency of medical contacts, daily activities, extensiveness of attempts to obtain relief, subjective measures of credibility, and the consistency and compatibility of the nonmedical evidence with the medical. *Id.* at 1132.

The passage of five years between the last date of disability insurance coverage and the administrative hearing falls under the category of subjective measures of credibility that an ALJ may employ. The effect of the lapse of so much time between Fessler's last date of insurance coverage and the hearing is evident in both her and her husband's inability to distinguish clearly and consistently her condition at the time of the hearing from her condition during the period of disability coverage. (R. at 56, 60–62, 64, 66–67, 70, 80–81.) The fact that her impairments had worsened considerably between her date last insured and the hearing makes the testimony particularly problematic and raises doubts as to its reliability. (R. at 49.)

Nor did the ALJ rely exclusively upon the passage of time between Fessler's last date of insurance coverage and the hearing in making his credibility determination. First, he found her ability to complete all of the housework inconsistent with allegations of disabling pain. Since she was able to perform significant chores, such as washing clothes, making meals, and taking care of her and her husband's personal needs, (R. at 31, 108), these activities were more than the sporadic performance of limited daily tasks, *see Frey v. Bowen*, 816 F.2d 508, 516–17 (10th Cir.1987), and could reasonably be considered inconsistent with claims of disabling pain, *see Potter v. Secretary of Health & Human Services*, 905 F.2d 1346, 1349 (10th Cir.1990).

Second, the ALJ relied upon gaps in Fessler's seeking treatment to relieve her back pain. *See Huston*, 838 F.2d at 1132. Although Fessler argues her failure to seek treatment is excused by a lack of funds and

the need to seek approval from her insurance carrier before receiving treatment, the only evidence of this in the record relates to her choice of conservative treatment over surgery and does not explain the lengthy gaps between visits to her treating physicians. (R. at 247.) Finally, while not specifically referred to by the ALJ, the fact that Fessler left her job to move to Colorado and not because of her injury also supports his finding that her allegations of disabling pain were not credible. (R. at 229); *Potter,* 905 F.2d at 1349.

I find the ALJ's determination that Fessler's complaints of disabling pain were not credible has substantial support in the record and was based upon the proper legal standard.

### C. *Substantial Evidence in the Record*

 Fessler argues the ALJ's decision was not supported by substantial evidence because he relied exclusively upon a report prepared by consulting physician Dr. Brandt, and improperly rejected conflicting opinions of treating physicians Drs. Kotch and Brumfield.[4] While Dr. Brandt indicated Fessler could return to work in a report prepared for her worker's compensation insurance carrier on March 26, 1986, (R. at 237–40), Dr. Kotch had opined she must be classified as "temporary total disability [sic]" in a letter to attorney Richard Sadow on December 4, 1984, (R. at 232). The ALJ did not include reference to Dr. Brumfield's August 29, 1986 diagnosis of a shoulder impingement, lightheadedness and headaches in his hypothetical to the VE. (R. at 246.) Fessler asserts the ALJ's decision to rely entirely upon Dr. Brandt's report as the basis of his findings concerning her RFC, (R. at 38), improperly rejected the opinions of the treating physicians without good cause. (Pl.'s Br. at 5); *see Castellano v. Secretary of Health and Human Services,* 26 F.3d 1027, 1029 (10th Cir.1994). Fessler also argues the ALJ should have considered her claims of diabetes to include all her impairments in his disability determination. (Pl.'s Br. at 6.)

The Commissioner maintains Dr. Kotch's opinion was inconsistent with clinical findings, (Def's.Br. at 9), and the ALJ properly excluded the alleged shoulder impingement from consideration because treatment relieved Fessler's symptoms and she failed to return for treatment after her third visit with Dr. Brumfield. (Def.'s Br. at 11–13.) Because there was good cause to reject Dr. Kotch's opinion, and the shoulder impairment documented in the records of Dr. Brumfield was not a permanent condition, the Commissioner argues these medical findings were properly excluded from the ALJ's disability determination and the hypotheticals posed to the VE. *See Castellano,* 26 F.3d at 1029; *Bernal v. Bowen,* 851 F.2d 297, 301 (10th Cir.1988).

 The decision maker must give an assessment made by a treating physician substantial weight unless there is good cause not to do so. *Hargis,* 945 F.2d at 1489 (quoting *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir.1984)). If an ALJ rejects the opinion of a treating physician, he must give "specific and legitimate reasons." *Hamilton,* 961 F.2d at 1498. However, if an ALJ states he considered the entire record in making his decision, (R. at 37), a reviewing court cannot assume otherwise. *Id.* at 1498–99.

The ALJ stated he considered the entire record. (R. at 37.) His exhaustive discussion of Fessler's medical history supports this assertion. (R. at 26–31.) He concluded Fessler had the physical RFC for a range of light work within the limits set by Dr. Brandt in his evaluation of March 26, 1986, from her alleged disability onset through her date last insured. (R. at 35.) The ALJ used this evaluation for the period March 26, 1986 to December 31, 1988 because Fessler did not seek medical treatment for her lower back and right leg pain during that period. (R. at 34.) Although he did not explicitly reject Dr. Kotch's opinion that Fessler was temporarily totally disabled, the ALJ did not state why he found Dr. Brandt's conclusions to represent Fessler's condition for the peri-

---

**4.** While Fessler does not make this argument explicitly, she implies it in the arguments that the ALJ relied upon an improper hypothetical posed to the vocational expert, (Pl.'s Br. at 4–5), that

the ALJ failed to consider the evidence, (Pl.'s Br. at 5–6), and that the ALJ failed to develop the record as to an "onset issue." (Pl.'s Br. at 7–8.)

od November 28, 1983 to March 26, 1986 despite their apparent inconsistency with Dr. Kotch's conclusions contained in his letter of December 4, 1984.

■ The ALJ could reasonably find the reports of Drs. Kotch and Brandt consistent because Dr. Kotch did not find Fessler to be permanently disabled, but only temporarily disabled at the time of the December 4, 1984 letter. The fact that Fessler had been seeing Dr. Kotch for only three months also supports the ALJ's interpretation of the medical evidence. (R. at 223–26.) Finally, her medical history shows she had twice previously sought treatment for severe back pain and had responded well to that treatment. (R. at 182, 185.) "If an impairment can reasonably be treated or controlled it cannot constitute a disability." *Limon v. Shalala,* 884 F.Supp. 1481, 1487 (D.Colo. 1995) (citing *Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir.1988)); *see also Dixon v. Heckler,* 811 F.2d 506, 508 (10th Cir.1987).

The ALJ's interpretation of the medical evidence is also consistent with the fact that Fessler did not document any treatment for her back condition after December 4, 1984. The only medical records of any sort after that date are the letter and form from Dr. Brandt dated April 28, 1986, (R. at 237–40), and the records from visits to Dr. Brumfield from August 29 to September 19, 1986 relating to her shoulder condition, (R. at 246–47). While the record as a whole indicates Fessler suffered from periodic attacks of severe back pain, it does not show her medical condition lasted or could be expected to last continuously at least 12 months as required for a finding of disability. *See* 20 C.F.R. §§ 404.1505, 416.905 (1995); *Jacobs v. Chater,* 956 F.Supp. 1560, 1564 (D.Colo.1997).

Turning to Fessler's shoulder condition, the ALJ did not merely wish it away while "[w]hist[ling] a happy tune" in the mode of a Rogers and Hammerstein musical. (Pl.'s Br. at 7, n. 2.) Instead, he based his conclusion that the impairment dissipated upon the fact that Fessler sought treatment for it for only three weeks. (R. at 32–33.) While lack of funds and insurance explain her decision not to undergo surgery for this condition, they do not explain the fact that she did not return to see Dr. Brumfield at all, even though she was scheduled to do so 2–3 weeks

after her September 19, 1986 visit. (R. at 247.) It was reasonable to conclude from the evidence that her shoulder condition did not impair her ability to perform gainful activity for a period of 12 months or longer. The lesser weight given Dr. Brumfield's reports by the ALJ was appropriate because it was based upon "specific and legitimate reasons." *See Jacobs,* 956 F.Supp. at 1567 (citing *Hamilton,* 961 F.2d at 1498).

The ALJ refused to consider Fessler's claims of hypertension and diabetes because the medical record contains no complaints to physicians of symptoms relating to either condition. (R. at 32.) Fessler refutes this assertion, but can point only to her complaint to Dr. Brumfield of headaches as medical evidence of her suffering from any such symptoms. (R. at 247.) Because she did not produce medical records indicating she suffered some disability related to either hypertension or diabetes, the ALJ's conclusion that Fessler could perform light work had substantial support in the record. *See McGeer v. Apfel,* 1998 WL 214886, *5 (D.Kan. Mar.3, 1998); *Knighten v. Chater,* 106 F.3d 413, 414 (10th Cir.1997).

I find the ALJ's conclusion that Dr. Brandt's evaluation of Fessler's estimated RFC represented her capacities for the entire period in question has substantial support in the record. The hypothetical he posed to the VE was valid, because it represented all of Fessler's limitations throughout the period from the alleged onset of her disability through her date last insured. *See Ellison v. Sullivan,* 929 F.2d 534, 537 (10th Cir.1990). Therefore, the ALJ's conclusion that Fessler was capable of performing work that existed in significant numbers in the economy, based upon the VE's response to a valid hypothetical, has substantial support in the record.

## V. *Conclusion*

Fessler received a hearing at which the record regarding her claim was developed fairly and completely. No issues remained that required further factual development for the final decision as to her disability claim. The ALJ applied the correct legal standards and his decision has substantial support in the record. He considered all the evidence

when discounting Fessler's subjective complaints, and posed a hypothetical supported by substantial medical evidence to the VE. The Commissioner bore his burden of showing that Fessler was able to perform jobs that existed in substantial quantities in the economy. Therefore, I affirm the Commissioner's decision to deny benefits to Fessler. The appeal is denied.