**Horace S. HILL, Plaintiff,**

v.

**Jo Anne B. BARNHART,[1]
Commissioner of Social
Security, Defendant.**

**Civil Action No. 00–2468–GTV.**

United States District Court,
D. Kansas.

Feb. 19, 2003.

Joan H. Deans, J.H. Deans Law Office, Raytown, MO, for Plaintiff.

1. Because Jo Anne B. Barnhart became the Acting Commissioner of Social Security on November 9, 2001, she is substituted for Kenneth S. Apfel as Defendant to this lawsuit. See 42 U.S.C. § 405(g); Fed.R.Civ.P. 25(d).

Christopher Allman, David D Zimmerman, Kansas City, KS, for Defendant.

## MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiff Horace S. Hill brings this action pursuant to 42 U.S.C. § 1383(c)(3) and D. Kan. Rule 83.7, seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") partially denying his application for supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff seeks benefits for a heart condition beginning on April 10, 1993. The Commissioner determined that Plaintiff's condition did not become disabling until January 1, 1996, and denied benefits before that time. Plaintiff claims that the Commissioner's decision is not based upon substantial evidence, that the Commissioner improperly assessed his credibility, and that the Commissioner failed to analyze how Plaintiff's combined impairments limited his ability to work. The court disagrees, and affirms the Commissioner's decision.

## I. Procedural Background

On April 10, 1993, Plaintiff originally filed an application for supplemental security income. The claim was denied by the Commissioner, and Plaintiff sought review by this court. On August 7, 1997, this court remanded the case for further proceedings. While Plaintiff's original claim was pending before this court, he filed a second application for supplemental security income on January 16, 1997. When the original claim was remanded, the claims were consolidated and an administrative law judge ("ALJ") held a hearing on March 24, 1998, at which Plaintiff and his counsel were present. On April 3, 1998, the ALJ rendered a decision in which he determined that Plaintiff was entitled to benefits as of January 1, 1996, but not prior to that time. After the ALJ's partially unfavorable decision, Plaintiff requested that the Appeals Council review the portion of the ALJ's decision denying him benefits from April 10, 1993 through December 31, 1995. The Appeals Council denied Plaintiff's request for review on August 22, 2000, rendering the ALJ's decision the final decision of the Commissioner.

## II. Standard of Review

The Commissioner's findings are binding on this court if supported by substantial evidence. 42 U.S.C. § 405(g); *Dixon v. Heckler*, 811 F.2d 506, 508 (10th Cir.1987). The court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record and whether the Commissioner properly applied relevant legal standards. *Marshall v. Chater*, 75 F.3d 1421, 1425 (10th Cir.1996) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano*, 26 F.3d at 1028 (citations and internal quotation marks omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir.1992).

## III. ALJ's Findings

In his April 3, 1998 decision, the ALJ made the following findings:

- Claimant has not engaged in substantial gainful activity at any time since April 10, 1993.
- The medical evidence establishes that claimant has hypertensive cardiomyopathy; coronary artery disease; and weight disproportionate to height, but he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation[ ] No. 16.

- Claimant's testimony as to the severity of his impairments and attending symptoms is found to be reasonably credible within the parameters of the two residual functional capacity assessments set forth in the Rationale section of this decision. Specifically, claimant's complaints of chest pain, fatigue, dizziness and breathing problems are not manifested in the record or supported by substantial evidence of record until January 1, 1996, and only then on the basis of relation back in time from the testimony of the medical expert at the time of the hearing.

- Between April 10, 1993 and December 31, 1995, claimant retained a residual functional capacity to sit for 2 hours at a time for a total of 6 out of 8 hours, stand for 2 hours at a time for a total of 4 out of 8 hours, walk approximately 2 blocks, lift up to 20 pounds on occasion, bend and grip without limitation and climb 1 flight of stairs with no other restrictions. From and after January 1, 1996, claimant's residual functional capacity was reduced to no more than a limited range of sedentary work and his complaints of chest pain, fatigue, [and] dizziness were credible to the extent that claimant could sustain no more than limited sedentary work.

- Claimant is incapable of performing any of his past relevant work.

- Claimant has ranged between the ages of 50–54 years of age, which is defined as "approaching advanced age."

- Claimant has a high school education.

- Based on the exertional capacity for a range of light work, and claimant's age, education and work experience, Section 416.969 and the framework of Rule 202.13, Table No. 1, Appendix 2, Subpart P, Regulation[ ] No. 16 indicates that a conclusion of not disabled is appropriate for the timeframe of April 10, 1993 through December 31, 1995.

- Based on an exertional capacity for no more than a limited range of sedentary work from and after January 1, 1996, the framework of Rule 201.12, Table No. 1, Appendix 2, Subpart P, Regulation[ ] No. 16 indicates that a conclusion of disabled is appropriate.

- Although claimant had some nonexertional limitations prior to January 1, 1996, using the above cited Rule for the timeframe from April 10, 1993 through December 31, 1995, there were a significant number of jobs in the State of Kansas and the national economy, the numbers and identities of which were specifically set forth by the vocational expert at the time of claimant's hearing, which claimant could nonetheless perform.

- Claimant has been "disabled" within the meaning of the Social Security Act, as amended since January 1, 1996, but not prior thereto.

## IV. Discussion

■ Plaintiff first claims that the ALJ's decision to deny him benefits from April 10, 1993 through December 31, 1995 was not supported by substantial evidence. The court disagrees.

This case is characterized by an absence of medical evidence. While Plaintiff may have been suffering from a severe heart condition for several years, he rarely consulted a doctor, possibly because he could not afford it. There are large gaps in medical evidence, particularly between 1993 and 1997. The court was unable to locate any records for 1994, and only found records of three office visits in 1996. When Plaintiff did see a doctor, the doctor failed to document any physical limitations Plaintiff had due to his heart condition. Plaintiff's own testimony about any limita-

tions he experienced as a result of his condition was extremely vague as to how long he had experienced those limitations. Generally, he testified that his health had deteriorated since 1993, but especially in the six months before the ALJ's hearing. While he testified that he had been having problems breathing since 1993, he also stated that he "had something done about it" then. He also stated that while he had experienced chest pain since 1995, it was a less frequent occurrence in 1995 than it was in 1998. In addition, he testified that he was "in a lot better shape" from 1993 to 1995 than he was in 1998. The court also notes that Plaintiff completed a form in April 1993 for the Social Security Administration, where he indicated that at that time, he walked a mile a day. At the time of the hearing, Plaintiff testified that walking a half of a block made him short of breath.

During the hearing before the ALJ, Thomas Winston, a board-certified cardiothoracic surgeon testifying as a medical expert, opined that beginning in 1997, there was substantive medical evidence indicating that Plaintiff suffered from hypertensive cardiomyopathy. He also acknowledged that such a condition did not develop overnight. By liberally construing the evidence available, Dr. Winston concluded that Plaintiff's allegations of fatigue, dizziness, and breathing problems could be related back in time with a reasonable degree of medical certainty to January 1, 1996.

Dr. Winston's conclusion was controverted only by Plaintiff's general allegations that he has been unable to work since 1993. None of Plaintiff's treating physicians opined that Plaintiff was unable to work between 1993 and 1996. Although Plaintiff was admitted to the hospital in January 1995 for three days and was diagnosed on discharge with hypertensive vascular disease, obesity, and transient ische-

mia attack, he did not see a doctor for chest pain again until September 1995. On September 23, 1995, Dr. Jose Dulin, a treating physician, released Plaintiff back to his "regular activities" after seeing Plaintiff in an emergency room for chest pain.

Short of blindly accepting Plaintiff's allegations, Dr. Winston's testimony was essentially all the ALJ had to base a decision on. As noted above, there are large gaps in medical evidence and the record is virtually devoid of evidence indicating the extent and duration of Plaintiff's physical limitations. The court concludes that the ALJ's decision is supported by substantial evidence.

■ The ALJ also did not err in finding Plaintiff only partially credible. Because the ALJ is " 'optimally positioned to observe and assess witness credibility,' " *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir.1996) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991)), the court "may overturn such a credibility determination only when there is a conspicuous absence of credible evidence to support it," *Patterson v. Apfel*, 62 F.Supp.2d 1212, 1217 (D.Kan.1999) (citing *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992)). Credibility determinations made by the ALJ are generally treated as binding upon review. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir.1990).

As previously noted, Plaintiff's testimony was vague as to when he experienced shortness of breath, chest pains, and dizziness. Furthermore, he testified that his symptoms had worsened since 1995. Such testimony is inconsistent with his claim that he has been disabled since 1993. The ALJ was justified in considering this inconsistency, along with the fact that Plaintiff has not worked since 1987. The fact that Plaintiff failed to seek medical treatment for long periods of time is also signif-

icant. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.1988). Several courts have sustained an ALJ's credibility findings when a claimant alleged he experienced disabling pain, yet failed to procure medical care. *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 477 (6th Cir. 1988) ("In spite of the life-threatening nature of his condition, the claimant admits he has not followed the instructions of his physician to wear support hose: '[y]ou're looking at roughly close to a hundred dollars,' he testified, and '[a] pair of those support hose lasts approximately two to three months.' The claimant has found it possible to buy two packs of cigarettes a day, however."); *McKenney v. Apfel*, 38 F.Supp.2d 1249, 1256 (D.Kan.1999) ("McKenney did not fill the prescriptions, claiming he did not have the funds to do so. There is no indication McKenney ever tried to apply for aid in order to obtain these prescriptions."); *Jacobs v. Chater*, 956 F.Supp. 1560, 1567–68 (D.Colo.1997) ("[I]nability to pay for treatment does not necessarily preclude an ALJ from considering the failure to seek medical attention in credibility determinations, especially where the claimant could apparently afford beer and cigarettes."). In this case, Plaintiff testified that in 1993, he smoked two to three packs of cigarettes a day. The fact that he spent money on his cigarette habit suggests that Plaintiff may have been able to afford medical care if it was necessary. The court will not overturn the ALJ's credibility findings.

Finally, Plaintiff argues that the ALJ failed to consider the effects of his impairments in combination. The ALJ "must consider the combined effects of impairments that may not be severe individually, but which in combination may constitute a severe medical disability." *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir.1991); see also 20 C.F.R. § 404.1523. The ALJ specifically stated that he had considered all of Plaintiff's impairments in combina-tion. After reviewing the record as a whole, the court is convinced that the ALJ properly considered the cumulative effect of Plaintiff's impairments.

IT IS, THEREFORE, BY THE COURT ORDERED that the Commissioner's decision is affirmed.

Copies of this order shall be transmitted to counsel of record.

The case is closed.

**IT IS SO ORDERED.**